UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LISA FERENCY,

       Plaintiff,

   V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

**REPORT AND RECOMMENDATION**

10-CV-711
(FJS/VEB)

## I. INTRODUCTION

In September of 2007, Plaintiff Lisa Ferency filed an application for disability and disability insurance benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since July of 2007, due to a physical and mental impairments. The Commissioner of Social Security denied Plaintiff's claim.

Plaintiff, by and through her attorneys, Conboy McKay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for disability benefits on September 24, 2007, alleging disability beginning on July 10, 2007. (T at 10, 94).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Elizabeth W. Koennecke on September 17, 2009. (T at 22). Plaintiff appeared with an attorney and testified. (T at 28-44). Plaintiff's husband also testified. (T at 44-49).

On November 19, 2009, ALJ Koennecke issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 10-17). The ALJ's decision became the Commissioner's final decision on April 30, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on June 17, 2010.(Docket No. 1). The Commissioner interposed an Answer on October 4, 2010. (Docket No. 8). Plaintiff filed a supporting Brief on November 1, 2010. (Docket No. 12). The Commissioner filed a Brief in opposition on December 23, 2010. (Docket No. 17).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further administrative

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

proceedings.

## III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

    **1.   Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 10, 2007, the alleged onset date.  She concluded that Plaintiff had the following severe impairment: residuals of a cerebrovascular accident with non-dominant hemiparesis. (T at 1).

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 13).  The ALJ concluded that Plaintiff retained the residual functional capacity to perform less than the full range of sedentary work, as defined in 20 CFR § 404.1567 (a). (T at 13-16).

The ALJ found that Plaintiff could perform her past relevant work as a secretary. (T

at 16-17). Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Social Security Act, from the alleged onset date (July 10, 2007) through the date of the ALJ's decision (November 19, 2009) and was therefore not entitled to benefits. (T at 17). As noted above, the ALJ's decision became the Commissioner's final decision on April 30, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments in support of this position. First, Plaintiff contends that the ALJ should have concluded that her impairment met or medically equaled an impairment set forth in the Listings. Second, Plaintiff argues that the ALJ did not properly assess the opinion of her treating physician. Third, Plaintiff asserts that the ALJ did not properly evaluate her credibility. Fourth, Plaintiff contends that the ALJ erred by finding she could return to her past relevant work. This Court will address each argument in turn.

#### a. Listing-Level Impairment/Treating Physician's Rule

As discussed above, if a claimant suffers from an impairment or combination of impairments that meets or medically equals one of the impairments contained in the Listings, the claimant will be considered disabled.

Specifically, the impairments listed in Appendix 1 of the Social Security Regulations (the "Listings") are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing impairment is "conclusively presumed to be disabled and entitled to benefits." <u>Dixon v.</u>

Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530.

To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

Plaintiff contends that her impairment meets or medically equals the impairment set forth in § 11.04 of the Listings (Central nervous system vascular accident). To satisfy that Listing, a claimant must have had a central nervous system vascular accident "[w]ith one

7

of the following more than 3 months post-vascular accident":

> A. Sensory or motor aphasia resulting in ineffective speech or communication; or
>
> B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station

20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.04.

The phrase "persistent disorganization of motor function" is defined as: "paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.00 (C). "The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms." Id.

In the present case, the ALJ referenced Listing § 11.04, but concluded that Plaintiff's "impairment, while severe, [did] not rise to the level of severity necessary to meet or medically equal this listing." (T at 13). The ALJ did not offer a detailed explanation for her conclusion in this regard or cite any particular piece(s) of supporting evidence in support of her finding.

There is no dispute that Plaintiff experienced a central nervous system vascular accident on or about July 10, 2004 - specifically, an acute cerebral artery embolic infarct (stroke) secondary to dissection of her right carotid artery. (T at 195). Plaintiff points to an August 2009 assessment from Dr. Jack Rush, a treating physician, in support of her argument that her impairment satisfies Listing §11.04.

Dr. Rush noted residual weakness and loss of coordination on Plaintiff's left side and opined that Plaintiff could never engage in fingering with her left hand and was limited to occasional reaching, handling, and pushing/pulling. (T at 367-68). Dr. Rush further indicated that Plaintiff could operate foot controls occasionally. (T at 368). Dr. Rush opined that Plaintiff was "unable to file due to loss [of] fine motor skills" and was unable to type or multi-task easily. (T at 372). In a July 2009 office note, Ms. Sonja Pierce, a treating nurse practitioner who worked in collaboration with Dr. Rush, described Plaintiff's fine motor skills as "minimal" and indicated that Plaintiff was unable to pick up coins and found it very difficult to perform filing. (T at 354). Ms. Pierce also indicated that Plaintiff's left foot cramped with activities, making it difficult to walk. (T at 354).

Dr. Latif, Plaintiff's treating neurologist, assessed that Plaintiff was limited with regard to reaching, handling, fingering, and feeling. (T at 547). Dr. Latif opined that Plaintiff's left side deficit restricted her from the workplace and rendered her unable to function at a productive level. (T at 549). He noted Plaintiff's left side weakness and loss of fine motor skills. (T at 547).

The assessments of Plaintiff's treating physicians indicate significant and persistent disorganization of motor function in two extremities (her left arm and left foot), resulting in sustained disturbance of gross and dexterous movements. Under the "treating physician's rule," the ALJ must give controlling weight to a treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v.

9

Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In the present case, the ALJ afforded "considerable evidentiary weight" to Dr. Rush's opinion, with only one exception noted.[5] (T at 15). The ALJ's assessment of Dr. Rush's opinion cannot be reconciled with her conclusion that Plaintiff's condition did not meet or medically equal § 11.04 of the Listings. As discussed above, Dr. Rush noted residual weakness and loss of coordination and fine motor skills on the left side. (T at 367, 542). He also found manipulative limitations (T at 368, 542) and fatigue issues. (T at 372). The ALJ did not explain how she could simultaneously assign Dr. Rush's opinion "considerable evidentiary weight" and find that § 11.04 had not been satisfied. It seems possible the ALJ

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

[5]Dr. Rush indicated that Plaintiff must periodically alternate sitting and standing to relieve pain or discomfort. The ALJ concluded that the need to alternate positions could be "accommodated by the usual work breaks." (T at 15)

did not consider Dr. Rush's assessment in that context. Meaningful review of the ALJ's decision is frustrated by her cursory (three-sentence) finding that Plaintiff's impairment did not satisfy § 11.04 of the Listings. (T at 13). As such, a remand is required for reconsideration of this question.

The ALJ afforded Dr. Latif's assessment "only partial weight in determining [Plaintiff's] residual functional capacity," but did not explain what weight (if any) she afforded it when assessing whether Listings § 11.04 had been satisfied. (T at 16). The ALJ referenced Dr. Latif's opinion that Plaintiff was limited with regard to reaching, handling, fingering, and feeling, but faulted the physician for failing to "provide clarification as to how often [Plaintiff] is able to perform these tasks." (T at 16). Before discounting this aspect of Dr. Latif's assessment, the ALJ was obliged to re-contact him for clarification. This was particularly important where, as here, the record contained evidence that Plaintiff's left-side fine motor skills were materially impaired; *i.e.,* Dr. Rush (whose opinion the ALJ gave "considerable evidentiary weight") found that Plaintiff could only reach and handle occasionally with her left hand and could never finger with that hand. (T at 368).

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3

11

(E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

In this case, this Court finds that the ALJ erred by failing to re-contact Dr. Latif before discounting his opinion, particularly with regard to Plaintiff's fine motor limitations. It is also not clear whether the ALJ adequately considered Dr. Latif's assessment when determining whether Plaintiff's impairment met or medically equaled the impairment set forth at § 11.04 of the Listings. Again, meaningful review is frustrated by the ALJ's failure to provide a detailed explanation or specific evidentiary citation in support of her finding with respect to § 11.04. Remand is the proper remedy where, as here, the ALJ failed to provide "good reasons" for setting aside a treating physician's opinion. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999); see also Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir.1998) (finding that the "Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error").

A remand for reconsideration of the treating physicians' opinions (particularly with regard to Listing § 11.04) and further development of the record is recommended.

### b.   Credibility

Courts in the Second Circuit have determined pain is an important element in disability benefit claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of

disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;

>  4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
>  5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
>  6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
>  7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the instant case, Plaintiff testified that the toes of her left foot clench when she sits or walks, causing pain during the course of a day. (T at 32). She also testified that she has difficulties with her balance and memory. (T at 32). Plaintiff testified that her coordination and fine motor skills on her left side were "lost" following her stroke. (T at 31). She is able to type for short periods using her right hand exclusively. (T at 39).

The ALJ concluded that Plaintiff's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (T at 14). The ALJ placed heavy emphasis on the fact that Plaintiff returned to work as a church secretary following her stroke and left that employment because of church "politics," rather than because of her disability. (T at 14). In the ALJ's view, Plaintiff's ability to perform that work undermined her claims of disabling pain. (T at 14).

However, that conclusion is valid only if the church secretary position imposed exertional and non-exertional demands equivalent to the demands of competitive, remunerative employment. In fact, Plaintiff testified that her employer allowed her to arrive and leave as needed (T at 43), providing a much greater level of flexibility than would be expected in a competitive employment environment. As discussed further below, the ALJ did not adequately consider these accommodations and appears to have placed undue weight on Plaintiff's work as a church secretary.

Further, the ALJ noted Plaintiff's complaints of disability fatigue and stress, but discounted those complaints because "none of her treating physicians have identified these symptoms as limiting her ability to work." (T at 14). This statement is simply incorrect. Dr. Rush indicated that Plaintiff has a "memory impairment" and mentioned several times that Plaintiff "fatigues easily." (T at 367, 369, 371-72).

Accordingly, this Court finds that the ALJ should revisit the question of Plaintiff's credibility on remand.

### c.     Past Relevant Work

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant

work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

The ALJ concluded that Plaintiff was capable of performing her past relevant work as a secretary. (T at 16). Again, the ALJ placed heavy emphasis on the fact that Plaintiff worked as a church secretary following her stroke and left that employment because of church politics (and not because of her alleged disability).

The ALJ also discounted Plaintiff's claim that she was only able to perform the work because of special accommodations provided by her employer. The ALJ dismissed this argument, finding that Plaintiff had not provided sufficient detail concerning the nature and extent of the accommodations. (T at 17). This was error. If the ALJ did not believe sufficient detail had been provided concerning the accommodations, she should have developed the record in that regard. This was particularly necessary because, as noted above, the ALJ's reliance on Plaintiff's employment as a church secretary is based upon the assumption that the demands of the job were comparable to the requirements of competitive, remunerative employment.

Moreover, the record does not contain substantial evidence to support the

16

conclusion that Plaintiff retained the RFC to work as a secretary as that work is customarily performed.

In support of her decision, the ALJ referenced the job description for secretary set forth in the *Dictionary of Occupational Titles* (DOT) #201.362-030.  Among the job duties listed for that position are: "Files correspondence and other records . . . May prepare notes, correspondence, and reports, using word processor or computer terminal."

As noted above, Dr. Rush opined that Plaintiff was unable to file or type due to left-sided loss of fine motor skills. (T at 372).  Dr. Rush also indicated that Plaintiff was "unable to multi-task" due to problems with confusion. (T at 372).  These limitations would certainly interfere materially with Plaintiff's ability to perform work as a secretary, as described in the DOT listing.  The ALJ afforded "considerable evidentiary weight" to Dr. Rush's opinion when determining Plaintiff's RFC (T at 15), but provided no explanation as to how that opinion might be reconciled with a conclusion that Plaintiff could perform work as a secretary in a competitive, remunerative environment.  Remand is therefore recommended.

**3.     Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this

Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   April 30, 2012

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 30 , 2012

_____
Victor E. Bianchini
United States Magistrate Judge